Filed 3/4/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAFETY-KLEEN OF CALIFORNIA, INC., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF TOXIC SUBSTANCES CONTROL, <br><br>     Defendant and Respondent. | A166575 <br><br> (Alameda County <br> Super. Ct. No. RG20050077) |

Safety-Kleen of California, Inc. (Safety-Kleen) appeals from the denial of its petitions for writ of mandate seeking to compel the Department of Toxic Substances Control (the Department) to set aside final inspection violation scores concerning Safety-Kleen's oil and hazardous waste treatment facility. Safety-Kleen argues the Department abused its discretion under the Hazardous Waste Control Law (Health and Safety Code, § 25100 et seq.[1]; hereafter "HWCL") by classifying certain violations found at Safety-Kleen's facility as Class I violations or by reclassifying several prior "Class II" violations as more serious "Class I" violations. We disagree.

Applying settled rules of statutory construction, we conclude that section 25110.8.5 sets forth independent bases under subdivisions (a)(1), (a)(2), and (b), for categorizing a violation as a Class I violation and that

---

[1] All further statutory references are to the Health and Safety Code.

1

violations under subdivisions (a)(2) and (b) may be classified as Class I without meeting subdivision (a)(1)'s requirement that a violation pose a "significant threat to human health or safety or the environment." Accordingly, the Department did not abuse its discretion in determining Safety-Kleen's final inspection violation scores, and we shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

## A. The Department and its "Violations Scoring Procedure"

The Department is generally responsible for enforcing the HWCL and for adopting and enforcing regulations implementing the law. (§ 25180; *Athletics Investment Group LLC v. Department of Toxic Substances Control* (2022) 83 Cal.App.5th 953, 960.) The HWCL authorizes the Department to issue permits for the operation of hazardous waste facilities, without which a hazardous waste facility cannot accept, treat, store, or dispose of hazardous waste. (§§ 25200, subd. (a), 25201, subd. (a).) These permits are for fixed terms not exceeding 10 years. (§ 25200, subd. (c)(1).) The owner or operator of a facility holding a hazardous waste facilities permit must comply with the conditions of its permit, the HWCL, and the Department's regulations, including regulations that become effective after the issuance of the permit or grant of interim status. (§ 25202, subd. (a).)

To ensure compliance with all operating requirements, the Department inspects facilities where hazardous wastes are stored, processed, or disposed of. (§ 25185, subd. (a)(1); Cal. Code Regs., tit. 22 (hereafter "Regs."), § 66271.50, subd. (a)(1).) "At the conclusion of the inspection, the inspector shall deliver to the operator of the facility or site a written summary of all violations alleged by the inspector." (§ 25185, subd. (c)(1).) The HWCL classifies violations into three primary categories: Class I violations; Class II

2

violations; and minor violations, which are a subset of Class II violations. (§§ 25110.8.5, 25117.6.)

Effective January 1, 2019, and prompted by legislation requiring the adoption of "regulations establishing or updating criteria used for the issuance of a new or modified permit or renewal of a permit," including criteria such as the "[n]umber and types of past violations that will result in a denial" (§ 25200.21, added by Stats. 2015, ch. 611, § 1), the Department implemented new regulations governing the "Violations Scoring Procedure" (or "VSP") for hazardous waste facility operations. (Regs., § 66271.50– 66271.57.) This scoring procedure refers to "the totality of the criteria and steps . . . that govern the consideration of a facility's compliance history by the Department in making specified permit decisions and the remedies available to an owner or operator in response to decisions proposed or made by the Department." (*Id.*, § 66271.50, subd. (a)(4).)

Facilities undergo VSP scoring on an annual basis, and the scoring considers only Class I violations as regulatorily defined. (Regs., §§ 66271.50, subd. (c), 66271.54, subd. (c).) The Department begins the scoring process by determining a facility's initial score for all Class I violations in the preceding 10-year period; this entails consideration and categorization of the potential harm to the public or the environment that a violation poses and the extent of the violation's deviation from the hazardous waste management requirements. (*Id.*, § 66271.51, subds. (a)–(c).) The Department utilizes a regulatory matrix to determine the initial score for each violation, which can be adjusted upwards for repeat violations. (*Id.*, §§ 66271.51, subd. (d), 66271.52.)

Next, the Department issues a "provisional inspection violation score" (provisional score) (regs., § 66271.53, subd. (a)), which may be

3

administratively disputed by a facility owner or operator (*id.*, § 66271.53, subd. (c)).  If the owner or operator does not file a timely dispute, then the provisional score becomes the final inspection violation score.  (*Id.*, § 66271.53, subd. (d)(1).)  When a timely dispute is filed, the provisional score will become the final inspection violation score "consistent with the dispute resolution official's written decision."  (*Id.*, § 66271.53, subd. (d)(2).)

Thereafter the Department calculates the Facility VSP Score, which "consists of the sum of the provisional or final inspection violation scores for each compliance inspection conducted during the preceding ten (10) year period, divided by the number of such inspections."  (Regs., § 66271.54, subd. (a).)  At the conclusion of the VSP, the Department assigns a facility to one of three "compliance tier[s]" based on its Facility VSP Score:  the "acceptable" tier (a Facility VSP Score of less than 20); the "conditionally acceptable" tier (a Facility VSP Score equal to or greater than 20 and less than 40); and the "unacceptable tier" (a Facility VSP Score equal to or greater than 40).  (*Id.*, § 66271.54, subd. (b).)

**B.  The Newark facility and the underlying proceedings**

Safety-Kleen owns and operates a facility in Newark, California ("the facility"), where it engages in the commercial collection, treatment, and transfer of used oil and other hazardous wastes.  Safety-Kleen acquired the facility in 2013, and the facility operates under a permit issued by the Department pursuant to the HWCL.

In April and May 2019, the Department inspected the facility and documented two Class I violations.  The Department issued a provisional score of 26.25 in June, which Safety-Kleen administratively disputed.  The Department's dispute resolution officer made no adjustment, and in December 2019, the Department adopted the provisional score as the final

4

inspection violation score. In January 2020, Safety-Kleen filed a petition for mandamus challenging its final inspection violation scores, which it alleged impacted its facility VSP score and compliance tier assignment. In an amended petition, Safety-Kleen again challenged its final inspection violation scores, alleging those scores impacted the Facility VSP score which was 17.36 in 2019 (which is in the "acceptable" compliance tier). More specifically, Safety Kleen alleged that the Department counted minor violations against the Facility which "contribut[ed] inaccurately, disproportionately and unfairly to the Facility's subsequently issued Final Facility VSP Score of 17.36, and mov[ed] the Facility closer to the 'conditionally acceptable' category and the imposition of additional regulatory requirements in the next compliance period." Safety-Kleen sought a writ of mandate compelling the Department to set aside the final inspection violation scores. Safety-Kleen's petition was also labeled as a complaint seeking a declaration that the Department's administration of the VSP program violated Safety-Kleen's due process rights.

In November 2020, Safety-Kleen filed a second petition for mandamus challenging the final inspection violation scores that the Department issued between January 2009 and December 2018. Safety-Kleen alleged it administratively disputed the various Class I violations documented during these earlier inspections, and though the Department's dispute resolution officer reduced two individual violation scores to zero (violation nos. 8 and 12), the other challenged individual violation scores remained unadjusted or only somewhat reduced. As a result of the dispute resolution process, Safety-Kleen's Facility VSP Score was 14.86, placing the facility in the "acceptable" compliance tier. Safety-Kleen sought a writ of mandate to set aside the final inspection violation scores and "if not ordered to be reduced to zero in their

entirety, to reconsider the Inspection Violation Scores as directed by and under the continuing supervision of [the] Court." Like the first petition, this second petition was also styled as a complaint seeking a declaration that the Department's administration of the VSP program violated Safety-Kleen's due process rights, as well as a declaration of the parties' rights and duties.

Pursuant to the parties' stipulation, the trial court consolidated the two cases. At issue in the cases were 16 violations that the Department classified as Class I violations. In short, the violations were based on actual releases of hazardous waste (violation nos. 2, 4, 7, 11); deterioration of protective coating on secondary containment structures (violation nos. 3, 16, 18); use of unauthorized areas for storage and/or treatment of hazardous waste (violation nos. 10, 13, 14, 17); installation of fixtures or equipment without notice or approval (violation no. 15); failure to install a secondary containment structure or to maintain a secondary containment structure without cracks (violation nos. 1, 5); failure to provide documentation regarding inspections (violation no. 6); and failure to annually review its training plan (violation no. 9).

Aside from violation no. 15, the Department classified all of these violations as Class I violations pursuant to section 25110.8.5, subdivision (a)(2)(B), because they involved deviations from operating requirements that were significant enough that they could result in the failure to prevent releases of hazardous waste or constituents to the environment during the active period of facility operation. Violation no. 9 was additionally classified as a Class I violation because the deviation was significant enough that it could result in a failure to perform emergency cleanup operations or other corrective actions for releases (§ 25110.8.5, subd. (a)(2)(F)) and because the violation was chronic (*id.*, subd. (b)). Finally,

6

violation no. 15 was classified as a Class I violation pursuant to section 25110.8.5, subdivision (a)(2)(E), because the deviation was significant enough that it could result in a failure to ensure adequate financial resources to pay for facility closure.

During the trial court proceedings, Safety-Kleen argued that Class I violations under section 25110.8.5, subdivision (a)(2), must pose a significant threat to human health or safety or the environment, and that the Department improperly classified a number of violations as Class I violations even though they posed only a low potential for harm. Safety-Kleen also contended a number of violations that the Department had originally classified as Class II violations posing a low potential for harm were improperly reclassified as Class I violations, even though the Department had made no determination that the violations were chronic or that Safety-Kleen was recalcitrant as required to elevate a violation under section 25110.8.5, subdivision (b). In addition, Safety-Kleen claimed the Department assigned excessive and unsupported scores to violations and violated its due process rights.

The Department countered that Safety-Kleen failed to correctly identify and rebut the Department's bases for classifying the challenged violations as Class I. Specifically, the Department indicated it relied on section 25110.8.5, subdivisions (a)(2) and (b), which set forth independent bases for a Class I violation in which a violation need not represent a significant threat to human health or safety or the environment. As for the allegedly improper reclassification of the Class II violations, the Department contended its "scoring team" determined these violations met the definitional requirements of Class I violations set out in subdivisions (a)(2) and (b) of section 25110.8.5, and so they were properly considered in the VSP. The Department further

7

contended that the individual violation scores were reasonably and factually supported, that Safety-Kleen failed to address the specific findings made by the Department to support the scores, and that Safety-Kleen's due process rights were not violated.

The trial court denied Safety-Kleen's petitions for mandamus and requests for declaratory relief and entered judgment in favor of the Department. The court agreed with the Department that section 25110.8.5 contained three independent bases for classifying a violation as a Class I violation, that a Class I violation need not necessarily represent a significant threat to human health or safety or the environment, and that Safety-Kleen failed to rebut the actual bases for the Department's classifications. The court also found the Department acted within its authority in determining that previously classified Class II violations were Class I violations. Finally, the court determined that the individual violation scores were reasonable and supported and that Safety-Kleen's due process arguments were without merit. Safety-Kleen filed a notice of appeal.

## DISCUSSION

Safety-Kleen contends the judgment must be reversed, claiming the trial court erroneously interpreted and applied the statutory law concerning the VSP scoring. Safety-Kleen first argues section 25110.8.5 requires that all Class I violations must be found to pose a "significant threat to human health or safety or the environment." Safety-Kleen further asserts that a Class II violation can be reclassified as a Class I violation only where the violation is chronic or committed by a recalcitrant violator. Based on this understanding of the statutory definitions of Class I and Class II violations, Safety-Kleen contends the Department abused its discretion by improperly classifying several violations (nos. 10 through 11, 13 through 15, 17, and 18) as Class I

8

violations in the first instance because they posed only a minimal potential for harm to public health or to the environment. Safety-Kleen also claims the Department abused its discretion by improperly reclassifying eight Class II violations (nos. 1 through 7 and 16) as Class I violations despite the lack of evidence satisfying Class I criteria. We address these contentions in order.

## A. The criteria for a "Class I violation"

This issue turns on the interpretation of section 25110.8.5 and its criteria for classifying a violation as a Class I violation. We review issues of statutory interpretation de novo. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.) "We begin our inquiry by examining [the statute's] words, giving them a plain and commonsense meaning. [Citation.] In doing so, however, we do not consider the statutory language in isolation. [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .' [Citation.] We avoid any construction that would produce absurd consequences." (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 577–578.)

We proceed bearing in mind that "[a]lthough the final responsibility for interpreting a statute or regulation rests with the court, judicial deference must often be accorded to the construction applied by an agency charged with the law's administration and enforcement. [Citations.] ' "The appropriate degree of judicial scrutiny in any particular case is perhaps not susceptible of precise formulation, but lies somewhere along a continuum with nonreviewability at one end and independent judgment at the other." [Citation.] Quasi-legislative administrative decisions are properly placed at that point of the continuum at which judicial review is more deferential . . . .' " (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1034.)

As relevant to Safety-Kleen's first contention, section 25110.8.5 provides: " 'Class I violation' means *any of the following*: [¶] (a) *A deviation* from the requirements of this chapter, or any regulation, standard, requirement, or permit . . . *that is any of the following*: [¶] (1) *The deviation represents a significant threat to human health or safety or the environment* because of one or more of the following: [¶] (A) The volume of the waste. [¶] (B) The relative hazardousness of the waste. [¶] (C) The proximity of the population at risk. [¶] (2) *The deviation is significant enough that it could result in a failure to accomplish any of the following*: [¶] (A) Ensure that hazardous waste is destined for, and delivered to, an authorized hazardous waste facility. [¶] (B) Prevent releases of hazardous waste or constituents to the environment during the active or postclosure period of facility operation. [¶] (C) Ensure early detection of releases of hazardous waste or constituents. [¶] (D) Ensure adequate financial resources in the case of releases of hazardous waste or constituents. [¶] (E) Ensure adequate financial resources to pay for facility closure. [¶] (F) Perform emergency cleanup operations of, or other corrective actions for, releases." (§ 25110.8.5, italics added.)[2]

Applying settled rules of statutory construction, we give effect to the plain language of section 25110.8.5, which explicitly articulates independent bases—under subdivisions (a)(1) and (a)(2)—for categorizing a violation as a Class I violation. Under subdivision (a)(1) of section 25110.8.5, a Class I violation consists of "any" deviation from statutory, regulatory, or other requirements that represents a significant threat to human health or safety or the environment for enumerated reasons. Under subdivision (a)(2), a

_____

[2]     Section 25110.8.5 provides that a Class I violation also includes "*a Class II violation which is a chronic violation or committed by a recalcitrant violator*." (§ 25110.8.5, subd. (b), italics added.) This category of Class I violations will be discussed in part B, *post*.

Class I violation also consists of "any" deviation that is significant enough that it could result in various enumerated failures. Notably, the language of subdivision (a)(2) neither incorporates nor even alludes to "a significant threat to human health or safety or the environment." Rather, that descriptive phrase is integral but particular to the definition of a Class I violation only under subdivision (a)(1).

"When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning. [Citation.] A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74.) Here, the statutory language plainly evinces the Legislature's intent that section 25110.8.5, subdivision (a)(2), captures a different type of deviation from operational requirements than subdivision (a)(1). Accordingly, we cannot and will not graft language from one subdivision into the other.[3]

Our construction does not produce absurd consequences. But requiring proof of a significant threat to human health, safety, or the environment could hamper advancement of section 25110.8.5, subdivision (a)(2)'s objectives, including its aim to ensure that operators of hazardous waste facilities maintain adequate financial resources to meet liability and other

---

[3] A recent practice guide, while certainly not determinative, supports this interpretation: "Class I violations are defined by statute to include deviations from the requirements of the HWCA that represent a significant threat to health, safety, or the environment . . . . *They also include significant deviations from requirements designed to accomplish* [*various enumerated objectives*]" and Class II violations "which are chronic violations or committed by a recalcitrant violator." (Manaster & Selmi, Cal. Environmental Law & Land Use Practice (2023) ch. 54, § 54.20[2][a], italics added.)

obligations. (E.g., § 25110.8.5(a)(2)(D) [in case of releases of hazardous waste or constituents]; § 25110.8.5(a)(2)(E) [to pay for facility closure].) Other HWCL statutes confirm the importance of this objective: "It is the intent of the Legislature, in enacting this article, . . . to ensure that new hazardous waste facilities are not sited unless the facility operator provides financial assurance that the operator can respond adequately to damage claims arising out of the operation of the facility." (§ 25199, subd. (c).) Similarly, section 25200.1 precludes the Department from issuing a hazardous waste facility permit unless "the facility operator is in compliance with regulations adopted by the department pursuant to this chapter *requiring that the operator provide financial assurance that the operator can respond adequately to damage claims arising out of the operation of the facility* or the facility is exempt from these financial assurance requirements . . . ." (Italics added.)

Safety-Kleen points to no case law supporting its contrary construction,[4] and instead resorts to legislative history to make its case. Generally, courts do not consult the legislative history where, as here, the relevant statutory language is unambiguous.[5] (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055.) Safety-Kleen,

---

[4] The Department requests that we take judicial notice of a superior court judgment in an unrelated case. Safety-Kleen opposes this request. Because the judgment has no precedential value, we deny that request for judicial notice. (*SHR St. Francis, LLC v. City and County of San Francisco* (2023) 94 Cal.App.5th 622, 642.)

[5] Though Safety-Kleen's opening brief did not contend the statutory language was ambiguous, its reply brief belatedly suggests the phrase "significant enough" in subdivision (a)(2) of section 25110.8.5 is ambiguous. We need not address this claim of ambiguity, as it comes too late. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.) In any event, as discussed below, we have reviewed the legislative history and find it does not compel Safety-Kleen's proposed construction.

12

however, argues the legislative history is relevant to " 'determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)  For the sake of completeness, we have reviewed the legislative history and conclude it does not compel Safety-Kleen's strained interpretation of section 25110.8.5.[6]

Section 25110.8.5 was enacted in 1994 by Senate Bill No. 1899 (Senate Bill 1899).  (Stats. 1994, ch. 1217, § 2.)  The law was intended to "define the terms 'Class I violation' and 'minor violation' " (Legis. Counsel's Dig., Sen. Bill No. 1899 (1993–1994 Reg. Sess.)) and to codify the then-existing regulatory definitions of Class I and Class II violations (Sen. 3d reading analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Aug. 22, 1994 [stating Senate Bill 1899 "[e]nacts the definitions of Class I and Class II Violations now in the regulations into statute"]).  The regulatory definition of a Class I

---

[6]     Before proceeding, we pause to address the parties' remaining requests for judicial notice.  We grant the Department's unopposed request for judicial notice of the California Environmental Protection Agency's and the California Certified Unified Program Agency (CUPA) Forum's *Violation Classification Guidance for Unified Program Agencies* (Rev. Mar. 6, 2020), as well as Safety-Kleen's unopposed request for judicial notice of the Department's *Final Statement of Reasons, Hazardous Waste Facility Permitting Criteria* (Sept. 2018) (hereafter "FSOR").

Over the Department's objection, we grant Safety-Kleen's request for judicial notice of Senate Bill No. 1899 and three related legislative reports.  In addition to these reports, we have reviewed several additional legislative reports concerning Senate Bill 1899.  (See Sen. Floor Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Aug. 29, 1994; Assem. Com. on Ways and Means, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Aug. 17, 1994; Sen. Com. on Toxics and Pub. Safety Management, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Apr. 25, 1994; Sen. Com. on Toxics and Pub. Safety Management, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Apr. 11, 1994.)

violation is the same now as it was when Senate Bill 1899 was passed, and as Safety-Kleen acknowledges, the regulatory definition of a Class I violation is substantially similar to the definition in section 25110.8.5.

As relevant here, section 66260.10 of the regulations defines a Class I violation as: "(a) a deviation from the requirements specified in Chapter 6.5 of Division 20 of the Health and Safety Code, or regulations, permit or interim status document conditions, standards, or requirements adopted pursuant to that chapter, *that represents a significant threat to human health or safety or the environment, because of* (1) the volume of the waste; (2) the relative hazard of the waste; or (3) the proximity of the population at risk, *or that is significant enough that it could result in a failure to accomplish the following*: [¶] (A) Assure that hazardous wastes are destined for and delivered to an authorized hazardous waste facility; [¶] (B) Prevent releases of hazardous waste or constituents to the environment during the active or post closure period of facility operation; [¶] (C) Assure early detection of such releases; [¶] (D) Assure adequate financial resources in the case of releases; [¶] (E) Assure adequate financial resources to pay for facility closure; [¶] (F) Perform emergency clean-up operation or other corrective action for releases." (Italics added; see Manaster & Selmi, Cal. Environmental Law & Land Use Practice, *supra*, ch. 54, § 54.20[2][a] [statutory definition of Class I violations "is identical to the existing regulatory definition for Class I violations"].)

Relying first on the legislative declarations accompanying the enactment of section 25110.8.5, Safety-Kleen points to the declaration that violations must receive enforcement attention and action "in relation to the severity of the offense as measured by the danger to, or potential to endanger, public health and safety and the environment." (Stats. 1994,

14

ch. 1217, § 1, subd. (a); see FSOR, *supra*, p. 89 [describing Class I violations as "the most serious and significant types of hazardous waste management violations"].)  Safety-Kleen also notes the Legislature's declaration that "[t]he definition of a Class I violation includes, but is not limited to, the requirement that the violation represent a significant threat to human health and safety or to the environment," while "Class II violations, by definition, do not represent a significant threat to human health and safety or to the environment and are not indicative of chronic violations or of violations that are committed by a recalcitrant violator."  (Stats. 1994, ch. 1217, § 1, subds. (b)–(c).)  In Safety-Kleen's view, these legislative declarations demonstrate that "a Class I violation requires a threshold determination that a violation represents a 'significant threat' but might also include other requirements."  This is unpersuasive.

Although the Legislature certainly intended Class I violations to include those violations that represent a significant threat to human health and safety or to the environment, the cited declarations reflect no intent to exempt deviations that could result in the failure to accomplish the enumerated objectives set out in subdivision (a)(2) of section 25110.8.5 from the definition of Class I violations.  The inclusion of the words "but is not limited to" in section 1 of Senate Bill 1899 reasonably indicates that Class I violations include more than those deviations that represent a significant threat to human health and safety or to the environment.  (*People v. Arias* (2008) 45 Cal.4th 169, 181 ["the proviso 'including, but not limited to' 'connotes an illustrative listing, one purposefully capable of enlargement' "].)  Moreover, section 1's statement that Class II violations "do not represent a significant threat to human health and safety or to the environment and are not indicative of chronic violations or of violations that are committed by a

15

recalcitrant violator" is not a clear expression of a legislative intent to limit Class I violations to *only* those violations that pose a significant threat to human health or safety or the environment.[7]

Safety-Kleen's reliance on legislative reports fares no better. (E.g., Assem. Com. on Environmental Safety and Toxic Materials, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) July 5, 1994; Sen. 3d reading analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Aug. 22, 1994; Sen. Floor 3d reading analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) June 1, 1994.) We acknowledge that these reports reflect the Legislature's intent to distinguish between Class I and Class II violations and to provide a different, less severe enforcement mechanism for Class II violations. (See, e.g., Assem. Com. on Environmental Safety and Toxic Materials, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) July 5, 1994; Assem. Com. on Ways and

---

[7] In a similar vein, Safety-Kleen relies on non-exclusive language in the Department's "Official Enforcement Response Policy DTSC OP-0006" stating: "Examples of potential Class I Violations include the following:  [¶] 1. A release or serious threat of a hazardous waste to the environment, or violation that causes a release or serious threat . . . ."  Safety-Kleen also relies on a document prepared by the California Environmental Protection Agency and CUPA Forum, stating that "Class I violations . . . *include* . . . violations that pose a significant threat of harm to the environment or human life."  (Cal. Environmental Protection Agency and CUPA Forum, Violation Classification Guidance for Unified Program Agencies, p. 4, italics added.)  This non-exclusive language does not support Safety-Kleen's position.

Notably, a separate example of a Class I violation in the Department's "Official Enforcement Response Policy" is "[a] violation that involves the failure to assure that proper closure and post closure activities will be undertaken, for example: [¶] Failure of an owner/operator to develop closure or post closure plans."  (Bullet point omitted.)  As such, this document is consistent with the Department's position that section 25110.8.5 subdivision (a)(2), sets out an independent basis for categorizing violations as Class I violations.  (§ 25110.8.5, subd. (a)(2)(E).)

16

Means, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Aug. 17, 1994.) But contrary to Safety-Kleen's suggestion, these reports evince no clear legislative contemplation that Class I violations exclude any deviation that does not pose a significant threat to human health or safety or the environment, even if the deviation meets the criteria enumerated in subdivision (a)(2) of section 25110.8.5.

Moreover, Safety-Kleen fails to acknowledge that two of the legislative reports contain statements acknowledging section 25110.8.5's provision of alternative independent bases for determining a violation is a Class I violation. These two reports state in relevant part: "Class I violations . . . are violations that (1) represent 'a significant threat to human health or safety or the environment' *or* (2) increase the likelihood that certain requirements (delivery of hazardous wastes to authorized facilities, prevention or detection of releases, emergency cleanups, financial assurance of cleanup or closure) will not be met." (Assem. Com. on Environmental Safety and Toxic Materials, Analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) July 5, 1994, italics added; Sen. 3d reading analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) Aug. 22, 1994, italics added.) Though other legislative reports may be read as defining a Class I violation in line with Safety-Kleen's position (e.g., Sen. Floor 3d reading analysis of Sen. Bill No. 1899 (1993–1994 Reg. Sess.) June 1, 1994), the perceived inconsistency across these legislative reports is insufficient to override the plain language of the statute.

## B.  Reclassification of prior violations

Safety-Kleen next contends the Department cannot reclassify a facility's Class II violation as a Class I violation based solely on a determination that the violation satisfies the definition of a Class I violation. In Safety-Kleen's view, whether or not a previously determined Class II

violation meets the definition of a Class I violation, the violation cannot be reclassified as such without evidence of the criteria in subdivision (b) of section 25110.8.5, which defines a third category of Class I violations, as follows: "The deviation is a Class II violation which is a chronic violation or committed by a recalcitrant violator." (See fn. 2, *ante*.) This statutory definition adopts the regulatory definition of "Class II violation," which, in short, means a deviation "that is not a Class I violation." (Regs., § 66260.10.) Whether a violation is chronic or a violator is recalcitrant requires evidence that "the violator has engaged in a pattern of neglect or disregard." (§ 25117.6, subd. (b)(2).)

We readily agree that section 25110.8.5 does not permit reclassification of a *true* Class II violation—i.e., a deviation that does not meet the definition of a Class I violation (Regs., § 66260.10)—as a Class I violation absent proof that the violation was chronic or the violator recalcitrant. But Safety-Kleen's argument is not limited to *true* Class II violations. Instead, Safety-Kleen contends that no deviation previously classified as a Class II violation and later found to meet the definition of a Class I violation under subdivision (a)(1) or (a)(2) of section 25110.8.5 can be reclassified as a Class I violation absent additional evidence that the violation is chronic or the violator recalcitrant as referenced in subdivision (b). We cannot agree.

Safety-Kleen points to no authority restricting the Department's authority to reevaluate Class I or Class II violation determinations during the VSP process. To the contrary, the regulatory scheme explicitly permits the Department to consider any violation as a Class I violation for purposes of the VSP, as long as it fits within the Class I definition: "For purposes of the Facility VSP Score, the Department may not consider any of the following: [¶] (1) Class II violations,' as defined in section 66260.10, *unless the*

18

*Class II violation meets the definition of a Class I violation as specified in section 66260.10.*" (Regs., § 66271.50, subd. (d)(1), italics added.)

Safety-Kleen argues the Department's interpretation of this regulation should not be given deference because the Department has taken inconsistent positions on the matter, as evidenced by the Department's FSOR.[8] This contention, however, rests on a portion of the FSOR that is taken out of context.

The Department drafted the FSOR to provide "a description of, and a statement of necessity for, each provision of the final regulatory text." (FSOR, *supra*, p. 4.) Notably, and as relevant here, the FSOR describes the regulatory definition of a Class I violation in a manner that aligns with our construction of section 25110.8.5. (FSOR, *supra*, at p. 89.) The FSOR then explains that a Class II violation is not a Class I violation. (*Ibid*.)

What follows is the language on which Safety-Kleen relies: "However, Class II violations that meet the definition of a Class I violation as specified in [regulation] section 66260.10 may be considered by DTSC for purposes of calculating a Facility VSP Score. Section 66260.10 provides that a Class II violation becomes a Class I violation when '[t]he violation is a Class II violation which is a chronic violation or committed by a recalcitrant violator.' The upgrading of a Class II violation to a Class I violation is done when DTSC determines that an administrative enforcement response is appropriate. This subsection does not impact how DTSC determines that a

---

8       In its reply brief, Safety-Kleen makes a similar argument also relying on a document prepared by the California Environmental Protection Agency and CUPA Forum, stating that chronic violations and or minor violations by recalcitrant violators can become Class I violations. (Cal. Environmental Protection Agency and CUPA Forum, Violation Classification Guidance for Unified Program Agencies, p. 4.)

Class II violation should [be] classified as a Class I violation. This regulatory text is needed to explain how Class II violations are considered, to avoid future disputes caused by lack of clarity during implementation of this regulation." (FSOR, *supra*, p. 90.)

Safety-Kleen's reliance on this passage is misplaced, as it contains no indication the Department was taking a position contrary to section 66271.50, subdivision (d)(1), of the regulations. To the contrary, the passage is consistent with the Department's position here that for purposes of calculating a facility's VSP score, any violation meeting the definition of a Class I violation as set forth in regulation section 66260.10 (or Health & Safety Code section 25110.8.5, subd. (a)) may be considered, as well as any Class II violation that becomes a Class I violation if the violation is chronic or the violator recalcitrant.[9]

In sum, we reject Safety-Kleen's contentions that the Department abused its discretion.

## C. Substantial evidence claim

Safety-Kleen asserts in passing that there was no substantial evidence supporting the Department's Class I determinations. The claim, however, is not captioned under a specific argument heading, and it largely is unsupported by record citations and a fair discussion of the evidence in the

---

[9] The day before oral argument, Safety-Kleen filed a letter pursuant to California Rules of Court, rule 8.254, citing for the first time the Department's *Initial Statement of Reasons, Hazardous Waste Facility Permitting Criteria* (Sept. 2017) (hereafter "ISOR"). As Safety-Kleen conceded at oral argument, the ISOR is not new authority that was unavailable when it filed its appellate briefs. (Cal. Rules of Court, rule 8.254(a).) In any event, the ISOR's discussion of regulation sections 66260.10 and 66271.50, subdivision (d)(1), is materially similar to the FSOR's discussion of those regulations and fails to assist Safety-Kleen's position for the reasons stated above.

administrative record.  As the claim is not properly presented, we decline to consider it further.  (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557; *Winslett v. 1811 27th Avenue, LLC* (2018) 26 Cal.App.5th 239, 248, fn. 6.)  In any event, Safety-Kleen's claims are dependent on its erroneous interpretation of section 25110.8.5; Safety Kleen makes no showing that the challenged Class I violations do not meet requirements of section 25110.8.5, subdivision (a)(2), as construed herein.

## DISPOSITION

The judgment is affirmed.  The Department is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278.)


_____

Fujisaki, J.


WE CONCUR:


_____

Tucher, P.J.


_____

Petrou, J.

Trial Court:       Alameda County Superior Court

Trial Judge:       Hon. Frank Roesch

Counsel:         Pillsbury Winthrop Shaw Pittman LLP, Mark E. Elliot and Margaret N. Rosegay, for Petitioner and Appellant

                     Rob Bonta, Attorney General of California, Edward H. Ochoa, Senior Assistant Attorney General, Jeremy M. Brown, Supervising Deputy Attorney General, David Zaft, Deputy Attorney General and Taylor Wetzel, Deputy Attorney General, for Respondent

*Safety-Kleen v. Department of Toxic Substance Control (A166575)*